VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.     25-AP-300

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

JULY TERM,   2026

CMRT Holdings, LLC\* v. Courtney Butler
a/k/a Courtney Lane and Jason Hunt

}
}
}
}
}

APPEALED FROM:

Superior Court, Orange Unit, Civil Division
CASE NO. 25-CV-01463
Trial Judge: Daniel P. Richardson

In the above-entitled cause, the Clerk will enter:

Landlord appeals from the trial court's denial of its request for attorney's fees in this eviction case.  We affirm.

Landlord filed an eviction case against tenants in April 2025, seeking possession of a mobile home, unpaid rent, and damages beyond normal wear and tear.  Tenants raised affirmative defenses, including habitability.  Tenants vacated the premises, and the court held a bench trial on damages in July 2025.  Landlord was represented by counsel; tenants were self-represented.

The following evidence was presented at trial.  Tenants rented a mobile home in a mobile-home park pursuant to a lease agreement.  Tenants agreed to pay $1300 per month and a copy of the lease agreement was entered into evidence.  A member of the corporation that owned the mobile home testified that tenants did not pay rent in March and April 2025.  Tenants vacated the premises in mid-to-late April 2025.  The member stated that tenants violated the no-smoking provision in the lease and caused extensive nicotine damage to the unit.  The member did not recall receiving any written notice from tenants regarding habitability issues.  He acknowledged receiving notice of habitability issues from the State Fire Marshal, however, in February 2025 following an inspection.  The State Fire Marshal called landlord and also provided landlord written notice of issues in the unit.  The member expressed surprise about the call because, while tenants had contacted him about issues in the unit in the fall of 2024, he understood that his contractors were waiting for a call back from tenants to schedule an appointment to make repairs.  Because he hadn't heard anything for five months, he assumed the issues had been addressed.

The Fire Marshal identified water damage from an unaddressed leak in the wall that damaged the wall and led to structural issues in the bathroom floor.  The member explained that tenants had contacted landlord about this issue, it was corroborated by landlord's maintenance

person, and that the problem went on for months because it was not repaired in a timely way. This issue required replacement of the bathroom floor. Other issues identified by the Fire Marshal included, among other things, electrical outlets that had been painted over by prior tenants and not repaired; electrical and plumbing connections, including the hot-water heater, that were not up to code and had to be replaced; hand railings on the exterior stairs that were not up to code and needed to be replaced; other subfloor issues in the unit that had to be addressed; a tear in the floor covering that may have started as a small tear and was then pulled up further by tenants' dogs; and a dryer vent and electrical outlet that needed to be updated to meet code. Many of the issues had been identified in the fall of 2024 and not addressed as of February 2025. The member said that after receiving the inspection report, he scheduled work to be done but acknowledged that some of the work was not completed in the time frame referenced by the inspection report. Landlord requested an extension to complete some of the work. Tenants had moved out prior to the end of the repair-extension period. The Fire Marshal told landlord that no one could move into the unit without his final approval of the unit. As of the date of the bench trial, no one had moved into the unit.

The individual who performed maintenance for landlord also testified. He lived next door to tenants. He described tenants as heavy smokers. He testified that tenants' unit was not in awful shape when they moved out but there were areas that needed attention. Tenants did not leave any garbage or belongings in the unit. Several appliances needed to be cleaned and there was some broken trim in the unit. There was also heavy nicotine buildup on the windows, window sills, and walls that needed to be removed with a putty knife. Approximately twenty hours of work had been devoted to addressing the nicotine issue and some of the trim work at the time of trial. The maintenance person testified that the unit was now generally clean. He estimated that it would take about ten more hours to finish the work in the unit. On cross-examination, the maintenance person acknowledged that tenants had not caused the water damage that required a new subfloor to be installed. Photographs taken by one of the tenants around the time she moved out were also admitted into evidence.

This tenant also testified. She described renting another unit in the same mobile-home park that lacked plumbing between the end of May 2025 until August 2025. Cf. 9 V.S.A. § 4457(c) ("The landlord shall provide an adequate amount of water to each dwelling unit properly connected with hot and cold water lines."). She was paying rent during this period. In August 2025, she and her co-tenant moved into the unit in question. She helped the maintenance person clean the unit. She was told she would be living in a construction zone, which she considered preferable to living in a unit without plumbing. She found mold in the bathroom closet and notified the maintenance person. He sprayed the mold and then put plywood or sheetrock over it. The tenant stated that she was allergic to black mold and suffered migraines that required her to be hospitalized. Other people in the unit were also sickened by the mold. The tenant mentioned the issue to the maintenance person and the State Fire Marshal then became involved. Tenant discovered black mold under the floor and later under the floor in the spare room. She paid for new sheetrock in the spare room. Tenant acknowledged that her dogs had pulled up some of the linoleum. She testified that she had complained about the linoleum flooring in the kitchen and asked that it be fixed. Tenant testified that she had cleaned the stove and refrigerator prior to moving out. Tenant recognized that her dog had damaged a door and damaged some trim and admitted to smoking in the unit. Tenant acknowledged not paying rent in March and April but explained that her co-tenant was out of work and they had contacted landlord to try to work something out on a month-to-month basis but landlord declined.

2

The court made the following findings on the record at the close of the trial. Tenants lived in a mobile home owned by landlord. The parties signed a lease agreement and tenants agreed to pay $1300 in monthly rent. Tenants vacated the premises sometime in late April or early May 2025. They did not pay rent in April or May. Landlord applied tenants' security deposit toward the outstanding rent, leaving a balance due to landlord of $1300.

With respect to landlord's claim regarding damage to the mobile home, the court considered the testimony somewhat mixed. Tenants offered credible testimony with respect to the state of the appliances in the unit. As indicated above, one of the tenants testified that she cleaned the stove and the refrigerator, and the rest of the unit both before she moved in and before she moved out. Tenants admitted to smoking in the home in violation of the lease and they admitted that their dogs had caused some damage to the home. The maintenance person testified that the unit had a number of issues, and the court credited his testimony.[*] It awarded landlord damages only for the twenty hours of work done to date, which included the cost of remedying smoke damage in the unit, for a total of $450. The court also awarded landlord court costs and fees, but it declined to award attorney's fees. In an entry order issued after the hearing, the court indicated that it rejected landlord's attorney's-fee request "due to the mixed nature of the verdict and counter evidence." This appeal followed.

Landlord argues that the court erred in denying its request for attorney's fees. It argues that the attorney-fee provision in the lease should be enforced. Landlord also contends that it was entitled to attorney's fees under 9 V.S.A. § 4456.

As landlord recognizes, "Vermont follows the so-called American Rule, which requires each party to bear its own attorney's fees unless an applicable statute or contract provides otherwise." Sweet v. St. Pierre, 2018 VT 122, ¶ 20, 209 Vt. 1. The parties' lease included the following provision:

> **Attorney's Fees.** If the Tenant acts in violation of this lease, Landlord has to defend against Tenant claims, or Tenant fails to vacate upon receipt of a termination notice, and Landlord has to retain an attorney to secure the Landlord's rights and remedies, the Landlord shall be entitled to recover from Tenant reasonable attorney's fees and other costs and expenses so incurred, including reasonable attorney's fees and expenses for sending any termination notices. Nonpayment of attorney's fees may be considered a breach of this lease agreement.

The statutory provision cited by landlord identifies a tenant's obligations and use and maintenance of a dwelling unit. It provides in relevant part that a "tenant shall not deliberately or negligently destroy, deface, damage, or remove any part of the premises or its fixtures, mechanical systems, or furnishings or deliberately or negligently permit any person to do so." 9 V.S.A. § 4456(c). Section 4456(e) states that "[i]f a tenant acts in violation of this section, the landlord is entitled to recover damages, costs, and reasonable attorney's fees, and the violation shall be grounds for termination under subsection 4467(b) of this title."

---

[*] While it is not clear, this appears to refer to the issues identified by the State Fire Marshal in February 2025, including structural issues, that were not tenant's responsibility.

As set forth above, the court found that tenants violated the terms of the lease agreement by failing to pay rent and by smoking in the unit. At the same time, however, it considered the verdict "mixed" and cited counterevidence presented by tenants. For that reason, it declined to award landlord attorney's fees.

Under the circumstances of this case, we conclude that the court acted within its authority in declining to award attorney's fees notwithstanding the contractual and statutory provisions above. We reached a similar conclusion in Villeneuve v. Beane, 2007 VT 75, 182 Vt. 575 (mem.). In that case, a landlord filed an eviction action against his tenants and claimed back rent. The landlord then "began a campaign of harassment against [the] tenants designed to force them to leave." Id. ¶ 4. Although the trial court found in the landlord's favor on claims for back rent, property damage, and electricity charges, it denied his request for "attorney's fees, provided for in the lease agreement, on the ground that [the] landlord breached the implied covenant of good faith and fair dealing repeatedly." Id. ¶ 6. The court found in the tenants' favor on their counterclaim for illegal eviction and compensatory damages, including punitive damages. It determined that the "landlord engaged in willful and knowing misconduct that was criminal in nature, and that his conduct was unlawful and outrageous." Id. ¶ 7. The resulting judgment, after considering set-offs, was an almost $3000 award to the tenants.

The landlord argued on appeal that he was entitled to an award of attorney's fees under the terms of the lease and under 9 V.S.A. § 4456(e). We agreed that "both of these provisions would ordinarily entitle [the landlord] to attorney's fees," but we found no error in the trial court's decision. Id. ¶ 9. We noted that, similar to the landlord, the court had not awarded tenants their attorney's fees even though the tenants had prevailed on their counterclaim. Given "the ultimate result in the case, in which both [the] landlord and [the] tenants prevailed after lengthy proceedings, emergency motions and bench trial," we concluded that "it made little sense for the trial court to award attorney's fees to either side," and that "[a] remand for an entry of fees for both sides would likely result in a 'wash.' " Id.

While the facts in this case differ, the egregious unaddressed habitability issues in the unit lead us to the same conclusion. See 9 V.S.A. § 4457(a) (providing that residential rental agreements include implied promise by landlord "to deliver over and maintain, throughout the period of the tenancy, premises that are safe, clean, and fit for human habitation and that comply with the requirements of applicable building, housing, and health regulations"); see also Hilder v. St. Peter, 144 Vt. 150, 159-60 (1984) (recognizing implied warranty in residential lease "that the landlord will deliver over and maintain, throughout the period of the tenancy, premises that are safe, clean and fit for human habitation," and that "[a] substantial violation of an applicable housing code shall constitute prima facie evidence that there has been a breach of the warranty of habitability").

The record shows that tenants brought habitability concerns to landlord's attention in the fall of 2024. The issue was corroborated by landlord's maintenance person. The issue went unaddressed, and tenants contacted a Fire Marshal. The inspection by the Fire Marshal showed serious issues in the unit including damages to the subfloor caused by a failure to address a water leak in a timely way. Landlord acknowledged that five months elapsed between tenants' complaints and the inspection by the Fire Marshal with apparently no work done to address the habitability issues during this period. Landlord's representative acknowledged receiving written notice from the Fire Marshal regarding habitability issues in the unit and acknowledged that tenants had vacated the unit before the extended time in which to complete the repairs expired. The unit could not be rented to others until it received final approval from the Fire Marshal.

4

Landlord's claim for possession was resolved before trial and it received a relatively small damages award, which was less than it sought. Under all of these circumstances, we conclude that the court did not err in denying landlord's request for attorney's fees.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Harold E. Eaton, Jr., Associate Justice

_____
Michael P. Drescher, Associate Justice